**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| TPV INTERNATIONAL (USA), INC.<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>Defendants. | No. 1:26-cv-03724 |

**COMPLAINT**

1. Plaintiff TPV International (USA), Inc. ("TPVI") is a U.S.-based importer and distributor of computer peripherals, including flat-panel LCD and LED computer monitors, which paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") between February 2025-February 2026. Through this action Plaintiff seeks a court order directing U.S. Customs and Border Protection ("CBP") to refund IEEPA duties paid by the Plaintiff, including those paid on finally liquidated entries that the United States has heretofore refused to refund.

2. Beginning in February 2025, through a series of executive orders, President Donald J. Trump invoked IEEPA as authority to impose new and substantial tariffs on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff was responsible for paying these tariffs on their imported goods, and did so on a continuous basis while the IEEPA duties were in effect.

3. IEEPA does not authorize these (or any other) tariffs, as this Court, the Federal Circuit, and the Supreme Court have already held. *See Learning Resources et. al. v. Trump, President of the U.S.*, *et. al.*, 607 U.S. 229 (2026); *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

4. After *Learning Resources* was remanded from the Supreme Court, CBP developed the Consolidated Administration and Processing of Entries ("CAPE") system within CBP's existing Automated Commercial Environment ("ACE") to enable importers to obtain certain refunds, with interest, on IEEPA tariffs that were unlawfully paid to the United States.

5. The CAPE system, however, is not an available mechanism to obtain refunds on all IEEPA tariffs. CBP has not enabled the CAPE system to process refunds on entries that were finally liquidated more than 80 days before an importer's submission of the relevant refund materials through CAPE.

6. In other tariff refund cases, CBP has taken the position that it cannot issue refunds to importers for finally liquidated entries without a court order. *See, e.g., V.O.S. Selections, Inc. et al. v. Trump*, No. 25-00066-RKE, ECF No. 98 at 5 (Government's Response to Order to Show Cause and Motion for Stay Pending Appeal).

7. In response, this Court has issued orders in pending refund lawsuits requiring the Government to issue refunds for finally liquidated entries to importers that have a pending action before this court. *See, e.g., Princess Awesome, LLC v. CBP,* No. 25-cv-00788-RKE, ECF No. 25 ("*In Re* Tariffs Collected in Reliance on International Emergency Economic Powers Act (IEEPA)").

8. Through this action, Plaintiff asks this court to issue similar relief that it has issued in pending refund lawsuits in the form of reliquidation of Plaintiff's entries that have already liquidated, without regard to the IEEPA tariffs.

9. Accordingly, for itself, Plaintiff seeks: (i) a declaration that the IEEPA duties are unlawful; and (ii) a full refund from Defendants of all IEEPA duties Plaintiff has paid to the United States as a result of the executive orders challenged in this lawsuit, including for entries that have finally liquidated.

**PARTIES**

10. Plaintiff TPVI is incorporated in California and is a Texas-based importer and distributor of computer peripherals, whose primary products include flat-panel LCD and LED computer monitors manufactured on an original design manufacturer basis. TPVI purchases products from its parent company, Top Victory Investment Limited, and imports the products primarily from its affiliated manufacturing facilities in China. TPVI imported the computer peripherals and other products that were subject to the IEEPA duties in the ordinary course of its business.

11. Defendant CBP is a component agency of the U.S. Department of Homeland Security headquartered in Washington, DC. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

12. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

13. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

14. Defendants are referred herein collectively as "CBP."

## JURISDICTION

15. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025).

16. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. *See* 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

17. Plaintiff has standing to bring this lawsuit because it was an importer of record for goods imported into the United States from countries that were subject to the unlawful IEEPA duties as implemented and collected by CBP. As a result of the executive orders challenged by this lawsuit, Plaintiff paid IEEPA duties to the United States and thus has suffered injury caused by those orders. Declaratory relief from this Court would redress those injuries.

## FACTUAL ALLEGATIONS

### I. President Trump Invokes IEEPA To Impose Sweeping Tariffs

#### A. The IEEPA Duties

18. On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs, and for each set of tariffs President Trump claimed that they were justified under IEEPA because of a purported national emergency.

19. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties to Address the Situation at Our Southern Border*, imposed an additional 25

percent tariff on the import of goods from Mexico. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

20. The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, declared an emergency because of opioid trafficking, and also imposed a 25% tariff, with certain exceptions.

21. Finally, the executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff Order"), also declared an emergency because of opioid trafficking, declaring that the "the sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." In the China Tariff Order, the President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

22. The China Tariff Order imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

23. On February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of*

*China*. *See* Exec. Order No. 14200*, Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9277 (Feb. 11, 2025).

24. On March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20% and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

25. On April 2, 2025, citing longstanding trade deficits as its own purported national emergency, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits.* The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific tariffs ranged from 11% to 50%.

26. The Reciprocal Tariff Order asserted that "U.S. trading partners' economic policies … suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *See* Reciprocal Tariff Order.

27. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14,259, 90 Fed. Reg. 15,509*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China.*

28. On April 9, 2025, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025), *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*. Meanwhile, the 20% trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

29. On May 12, 2025, the President issued Executive Order 14,298, which suspended certain of the China tariffs for 90 days pending negotiations with China. *See* Exec. Order No. 14, 298, 90 Fed. Reg. 21,831 (May 21, 2025), *Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*. This suspension of the China *ad valorem* tariffs was continued for another 90 days on August 11, *see* Executive Order 14,334, 90 Fed. Reg. 39,305 (Aug. 14, 2025), *Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China*.

30. In implementing his Executive Order-based tariff regime, the President directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that goods subject to the challenged tariffs to be entered under new tariff codes.

31. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Donald J. Trump*, *et al.*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. On February 20, 2026, the Supreme Court affirmed the Federal Circuit and held that IEEPA does not authorize tariffs. *See Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026).

**B. CBP's Implementation of the Illegal Tariffs**

32. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

33. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted new tariff nomenclature: the HTSUS. *See* Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id*.

34. CBP's regulations govern the classification and appraisement of merchandise consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

35. The United States International Trade Commission publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 637 F. Supp. 1218, 1225 (Ct. Int'l Trade 2009) ("The authority to modify the HTSUS lies with the President"); *see also Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

36. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

**C. Liquidation**

37. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

38. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts a value, country of origin, and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

39. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

40. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

41. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, liquidation is done automatically by operation of law. CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website.

42. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

43. Once liquidation has occurred, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking the CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.10.

44. But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

45. This Court and the Federal Circuit have cautioned that an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021); *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

46. This Court possesses the equitable authority to suspend liquidation. *E.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66.

## II. IEEPA Does Not Authorize Tariffs

47. The illegal tariffs relied on IEEPA, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq*., section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301.

48. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Federal Circuit.

49. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

50. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

51. On February 20, 2026, the Supreme Court affirmed the Federal Circuit and held that IEEPA does not authorize tariffs. *See Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026).

**III. Plaintiff Has Not Received Refunds For Certain Finally Liquidated Entries**

52. After *Learning Resources* was remanded, CBP developed the CAPE system within CBP's existing ACE. The CAPE system allows importers to submit an Excel file with a list of entries for which the importer believes it is entitled to a refund that were unliquidated or within 80 days of liquidation.

53. As of the date of this complaint, Plaintiff has not received refunds for IEEPA duties that were illegally collected on certain finally liquidated entries not permitted for submission in CAPE.

54. In other tariff refund cases, CBP has taken the position that it cannot issue refunds to importers for finally liquidated entries without a court order. *See, e.g., V.O.S. Selections, Inc. et al. v. Trump*, No. 25-00066-RKE, ECF No. 98 at 5 (Government's Response to Order to Show Cause and Motion for Stay Pending Appeal).

55. In response, this Court has issued orders in pending refund lawsuits requiring the Government to issue refunds for finally liquidated entries to importers that have a pending action before this court. *See, e.g., Princess Awesome, LLC v. CBP,* No. 25-cv-00788-RKE, ECF No. 25 ("*In Re* Tariffs Collected in Reliance on International Emergency Economic Powers Act (IEEPA)").

56. Plaintiff therefore seeks a court order directing CBP to refund all IEEPA duties Plaintiff paid on entries, including those subject to a final order of liquidation.

## CLAIMS FOR RELIEF

### COUNT I

### THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER *V.O.S. SELECTIONS*

57. Plaintiff incorporates paragraphs 1-56 above by reference.

58. The Court of International Trade in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), held that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 *et seq.*, when he imposed tariffs on imported goods. The Supreme Court agreed. *See Learning Resources et. al. v. Trump, President of the U.S.*, *et. al.*, 607 U.S. 229 (2026).

59. Plaintiff respectfully requests that this Court follow the binding precedent of the Federal Circuit and the Supreme Court, declare the IEEPA tariffs unlawful as to Plaintiff, and order CBP to refund all IEEPA duties collected from Plaintiff, with interest as provided by law, including finally liquidated entries.

### COUNT II

### DECLARATORY RELIEF, 28 U.S.C. § 2201

60. Plaintiff incorporates paragraphs 1-59 above by reference.

61. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

62. Plaintiff's claim presents an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs without making refunds available for finally liquidated entries.

63. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties on goods it has imported into the United States.

64. This Court can exercise its equitable power to enter a declaratory judgment that the IEEPA tariffs are unlawful for any of the above reasons, and that CBP must issue refunds for duties collected on finally liquidated entries to Plaintiff.

**PRAYER FOR RELIEF**

Wherefor, Plaintiff respectfully requests that this Court:

a) declare that the President lacks authority under IEEPA to set tariffs;

b) declare that the IEEPA tariffs are *ultra vires* and *void ab initio* with respect to Plaintiff;

c) declare that, with respect to Plaintiff, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the IEEPA tariffs;

d) order the United States to refund to Plaintiff the IEEPA duties collected on those entries, with interest as provided by law, including finally liquidated entries;

e) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

f) grant such further relief as this Court deems proper.

Dated: August 24, 2026

Respectfully Submitted,

/s/Alexander N. Ely
Greta L. Nightingale
Alexander N. Ely
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
202-383-5370
aely@omm.com

*Counsel for Plaintiff*